IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **FRANK EDWARDS, #B-72496,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 14-cv-01363-NJR |
| | ) |
| **SALVADOR GODINEZ,** | ) |
| **Z. ROECKEMAN, C/O NALLEY,** | ) |
| **DR. LIPCHITZ, SHANE ORANGE,** | ) |
| **J. C. JOHNSON, C/O KALAHER,** | ) |
| **C/O MASSEY, C/O MOHR,** | ) |
| **and C/O STONER,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Frank Edwards,[1] who is currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this civil rights action pursuant to 42 U.S.C. § 1983 (Doc. 1). Plaintiff is a transgender inmate, who claims that she was sexually assaulted at Big Muddy River Correctional Center ("Big Muddy") on September 9, 2014. In retaliation for reporting the incident, Plaintiff received a disciplinary ticket that led to her placement in segregation and transfer to Lawrence. She now sues the Director of the Illinois Department of Corrections' ("IDOC"), Salvador Godinez, and nine Big Muddy officials[2] for violating her rights under the First, Fourth, Eighth, and Fourteenth Amendments. Plaintiff seeks monetary damages, declaratory judgment, and injunctive relief.

---

[1] Plaintiff's legal name is Frank Edwards. However, Plaintiff Edwards claims to be a transgender inmate, who prefers to be called Tracey Edwards (Doc. 1, pp. 3, 5). Although the Court must use Plaintiff's legal name, feminine pronouns will be used in reference to Plaintiff Edwards.
[2] These officials include Warden Roeckeman, Dr. Lipchitz, Counselor Orange, C/O Nalley, C/O Johnson, C/O Kalaher, C/O Massey, C/O Mohr, and C/O Stoner.

**Merits Review Under 28 U.S.C. § 1915A**

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).  After carefully reviewing the allegations, the Court finds that the complaint survives preliminary review under Section 1915A.

**The Complaint**

In the early morning hours of September 19, 2014, Plaintiff was awakened from a deep sleep by Officers Johnson and Kalaher, two correctional officers at Big Muddy River Correctional Center ("Big Muddy") (Doc. 1, p. 5).  They ordered her to go into the dayroom.  At the time, Plaintiff was wearing only a small t-shirt and oversized underwear.  She informed the correctional officers of her transgender status and asked if she could get dressed before entering the dayroom.  The officers denied her request.  While in the dayroom, Plaintiff was forced to endure stares from male inmates, an experience the complaint characterizes as "torture."

At the same time, Officers Johnson and Kalaher searched her cell.  They threw her undergarments and other personal property into the gallery.  Plaintiff claims that this conduct violated the Fourth Amendment's prohibition against unlawful searches and seizures.

Lieutenant Nully[3] then handcuffed Plaintiff (Doc. 1, p. 6). Officers Massey and Stoner dragged her across the gallery. As they did so, Plaintiff's underwear slipped down and exposed her anus. She asked the officers to pull up her underwear, but they refused. Instead, Officers Massey and Stoner slammed Plaintiff into a door and held her against it. As they held her, "an unknown assa[i]lant began to penetra[te] Ms. Edwards. . . . In excruciating pain, feeling as if her insides were being ripped out, Plaintiff . . . Edwards pleaded with the defendants and the unknown assailant to stop because they were hurting her" (Doc. 1, p. 6). Rather than stopping the assault, however, Officers Massey and Stoner "found amusement in Plaintiff's agony." *Id.* They stated, "Since you wanna be a woman[,] now you[']re treated as such!" *Id.* The assault continued for at least 2½ minutes. Plaintiff claims that Defendants Godinez and Roeckeman were aware of the assault, although she never spoke to either of them about it.

After the assault, Plaintiff was escorted to segregation. Plaintiff attempted to have a bowel movement and discovered "a lot" of blood. She notified a nurse in the segregation unit. In response, Defendant Johnson and Mohr took Plaintiff to an outside hospital. On the way, they called her a "sickly fag*ot son of b*tch" (Doc. 1, p. 7). They also questioned her allegations by asking, "If you were raped[,] how in the hell did you feel it considering how many times you've been f*cked in the *ss?" *Id.* Officers Johnson and Mohr then told Plaintiff that she would be written up on disciplinary charges because she "didn't keep a close[d] mouth about what happen[ed] to her." *Id.* Plaintiff claims that these acts constituted retaliation, in violation of her First Amendment rights.

After returning to Big Muddy from the hospital, Plaintiff was placed under investigation. When Plaintiff complained that she was sexually assaulted, one of the investigators, Defendant

---

[3] Lieutenant Nully is not named as a defendant in this action, and it is not necessary to add him or her as a party because the complaint contains no allegation that this individual violated Plaintiff's constitutional rights.

Nalley, stated, "That was not sexual assault. It's just assault, and you don't need to worry about it" (Doc. 1, p. 8). Plaintiff also claimed that her grievances addressing the assault were never answered by Defendants Orange and Nalley, both of whom "passed the buck."

At the conclusion of the investigation, Plaintiff was ultimately issued a disciplinary ticket for intimidation, threats, insolence, and disobeying a direct order (Doc. 1, p. 7). The disciplinary hearing committee found her guilty of the violation(s) and punished her with three months in segregation and a transfer to Lawrence.

Plaintiff met with her psychiatrist, Defendant Lipchitz, to discuss the sexual assault. After recounting the events and discussing her response, Defendant Lipchitz agreed to give Plaintiff "a higher dose of everything," including her female hormones and her psychotropic medications.

Plaintiff now raises claims against Defendants under the First, Fourth, Eighth, and Fourteenth Amendments, as discussed in more detail below. Plaintiff seeks declaratory judgment, monetary damages, and injunctive relief. She specifically requests a preliminary and permanent injunction, in the form of an order prohibiting prison officials from transferring her back to Big Muddy and terminating the employment of the officers who participated in the assault (Doc. 1, p. 11).

## Discussion

**A.    Claims Subject to Further Review**

After carefully considering the allegations, the Court finds that the complaint articulates the following colorable federal claims, which shall receive further review:

> **Count 1:**    **Eighth Amendment excessive force claim against Defendants Massey and Stoner for dragging Plaintiff from the dayroom and pinning her down while she was allegedly sexually assaulted on September 19, 2014;**

> **Count 2:** Eighth Amendment claim against Defendants Massey and Stoner for failing to protect Plaintiff from the sexual assault;
>
> **Count 3:** Eighth Amendment deliberate indifference to medical needs claim against Defendants Massey and Stoner for failing to secure medical treatment for Plaintiff following the alleged sexual assault;
>
> **Count 4:** First Amendment retaliation claim against Defendants Johnson and Mohr for issuing Plaintiff a disciplinary ticket because Plaintiff did not "keep her mouth shut" about the sexual assault; and
>
> **Count 5:** Fourteenth Amendment equal protection claim against Defendants Massey, Stoner, Johnson, and Mohr for targeting Plaintiff for mistreatment based on her transgender status.

Because the complaint sets forth sufficient allegations to support claims against those individuals identified above in connection with Counts 1-5, Plaintiff shall be allowed to proceed with Counts 1-5 at this stage.

**B.     Claims Subject to Dismissal**

The complaint states no other claim for relief. Accordingly, the following claims against the below-listed defendants shall be dismissed:

> **Count 6:** Eighth Amendment claim against Defendants Johnson and Kalaher for denying Plaintiff's request to get dressed before going to the dayroom in a t-shirt and oversized underwear on September 19, 2014, which allegedly amounted to "torture;"
>
> **Count 7:** Fourth Amendment unlawful search and seizure claim against Defendants Johnson and Kalaher for searching Plaintiff's cell on September 19, 2014;
>
> **Count 8:** Fourteenth Amendment claim against Defendants Nalley and Orange for mishandling and/or denying Plaintiff's grievances addressing the sexual assault;
>
> **Count 9:** Fourteenth Amendment due process claim arising from the issuance of an allegedly false disciplinary ticket, placement in segregation for three months, and prison transfer; and

> **Count 10:** Eighth Amendment deliberate indifference to medical needs claim against Defendant Lipchitz.

Each of these claims, and the reasons for their dismissal, are discussed in detail below.

**Count 6 – "Torture" Claim**

The complaint articulates no viable Eighth Amendment claim for "torture" against Defendants Johnson and Kalaher, based on their denial of Plaintiff's request to get dressed before entering the dayroom. It is true that the Eighth Amendment prohibits conditions that "involve the wanton and unnecessary infliction of pain." *Gruenberg v. Gempeler*, 697 F.3d 573 (7th Cir. 2012) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In order to state a claim under the Eighth Amendment, Plaintiff must demonstrate that prison officials were "deliberately indifferent" to the conditions of her confinement. *Id.* (citing *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted)). The complaint must suggest that the conditions of Plaintiff's confinement resulted in "'the denial of the minimal civilized measure of life's necessities,'" and Defendants Johnson and Kalaher knew of and disregarded an excessive risk to Plaintiff's health and safety. *Bowers v. Pollard* 345 Fed. Appx. 191, 196 (7th Cir. 2009) (citations omitted).

The allegations do not satisfy this standard. In the prison context, it is often necessary to monitor inmates while they are in various stages of undress. *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984); *Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995) (noting that "monitoring of naked prisoners is not only permissible . . . but also sometimes mandatory"). At the time Plaintiff was ordered to go to the dayroom, she was not naked. She was wearing a t-

shirt and underwear. And although Plaintiff claims that the shirt was too tight and the underwear was too loose, poorly fitting attire does not give rise to a constitutional claim under the Eighth Amendment, even if it draws unwanted attention from other inmates. Accordingly, **Count 6** shall be dismissed without prejudice against Defendants Johnson and Kalaher.

**Count 7 – Unlawful Cell Search**

The complaint articulates no Fourth Amendment claim against Defendants Johnson and Kalaher for searching Plaintiff's cell. This is because a prisoner has no expectation of privacy in her prison cell. As stated by the Seventh Circuit:

> . . . society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Because Plaintiff has no constitutional claim regarding the search of her cell, **Count 7** shall be dismissed with prejudice against Defendants Johnson and Kalaher.

**Count 8 – Mishandling of Grievances**

The complaint also states no claim against Defendants Orange or Nalley for mishandling Plaintiff's grievances. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953

(7th Cir. 2011). Further, a cause of action does not arise where a plaintiff files a grievance and simply disagrees with the outcome. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where plaintiff had access to the grievance procedure but he did not obtain the outcome he desired). Whether she claims that Defendants Nalley and Orange improperly delayed or wrongfully denied her grievances, the complaint states no claim for relief. Accordingly, **Count 8** shall be dismissed with prejudice against Defendants Nalley and Orange.

**Count 9 – Due Process Violation**

The complaint also states no colorable Fourteenth Amendment due process claim for the issuance of a disciplinary ticket that resulted in Plaintiff's placement in segregation for three months and her transfer to Lawrence. While disciplinary segregation can trigger due process concerns depending on the duration and conditions encountered, no such concerns are triggered in this case. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009).

To begin with, the complaint does not suggest that Plaintiff was denied due process at her disciplinary hearing. To satisfy due process concerns, an inmate must be given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). The complaint does not raise any concerns regarding the manner in which the hearing was conducted.

Furthermore, the complaint alleges that Plaintiff was punished with three months of segregation and fails to describe the conditions that Plaintiff faced. Whether a protected liberty interest is implicated by Plaintiff's confinement depends on whether that confinement "imposed

an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Courts must consider two factors in determining whether disciplinary segregation imposes atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured." *Id.* at 743 (citing *Marion*, 559 F.3d at 697-98) (emphasis in original)).

Plaintiff was punished with three months of segregation. For these relatively short periods, inquiry into the specific conditions of confinement is not even necessary. *See, e.g., Holly v. Woolfolk,* 415 F.3d 678, 679 (7th Cir. 2005) (2 days); *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008) (59 days); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005) (60 days) *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1998) (holding that no liberty interest was implicated when considering prisoner's twelve-year sentence) (70 days). But even if inquiry into the conditions of Plaintiff's confinement was necessary, the complaint includes no description of these conditions at all. Under the circumstances, the allegations fall far short of supporting a due process claim, based on Plaintiff's receipt of a disciplinary ticket and placement in segregation for three months.

The fact that Plaintiff was transferred to Lawrence does not change the fate of this claim. "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison). Therefore, Plaintiff's transfer to Lawrence fails to offer any additional, or independent,

support for a Fourteenth Amendment due process claim. For these reasons, **Count 9** shall be dismissed with prejudice.

**Count 10 – Deliberate Indifference to Medical Needs**

The complaint states no viable Eighth Amendment deliberate indifference to medical needs claim against Defendant Lipchitz. Relevant to Plaintiff's claim, the Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, "[t]he plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard." *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

The complaint alleges that Defendant Lipchitz, a psychiatrist, increased the dosage of Plaintiff's medications (including her hormone treatments and psychotropic medications) after meeting with her to discuss the sexual assault. However, Plaintiff does not identify any particular medical condition, so the Court cannot assess its seriousness.

Further, the complaint does not suggest that Defendant Lipchitz responded with deliberate indifference to the condition. To establish deliberate indifference, Plaintiff "must demonstrate that prison officials acted with a "'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Officials must "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Plaintiff is not required to establish that the officials "intended or desired the

harm that transpired," but to instead show that they "knew of a substantial risk of harm . . . and disregarded it." *Greeno*, 414 F.3d at 653. The complaint is utterly devoid of allegations suggesting that Defendant Lipchitz exhibited deliberate indifference toward Plaintiff. Defendant Lipchitz increased Plaintiff's dosage of medications following the sexual assault; this is what one would expect, following a traumatic event. No claim has been stated against Defendant Lipchitz, and **Count 10** shall be dismissed without prejudice.

C. **Defendants Godinez & Roeckeman**

Finally, no claim has been stated against Defendants Godinez or Roeckeman in their individual capacities. In the complaint, Plaintiff claims that both individuals must have known about her sexual assault, despite the fact that she never communicated with either of them. In other words, Plaintiff's claim against these defendants is tied to their supervisory roles within the prison system. Defendant Godinez is the IDOC director, and Defendant Roeckeman is Big Muddy's warden.

However, the doctrine of *respondeat superior* does not apply to actions filed under Section 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). No allegations suggest that either Defendant personally participated in depriving Plaintiff of a constitutional right.

Further, although the doctrine of *respondeat superior* is not applicable to Section 1983 actions; "[s]upervisory liability will be found . . . if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan v. Village of East*

*Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997). *See also Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 615 (7th Cir. 2002) (allegations that an agency's senior officials were personally responsible for creating the policies, practices and customs that caused the constitutional deprivations suffice to demonstrate personal involvement). Here again, no allegations suggest that either of these defendants created a policy, custom or practice that resulted in the deprivation of Plaintiff's constitutional rights. Without more, all individual capacity claims against Defendants Godinez and Roeckeman fail and shall be dismissed.

Plaintiff also names these defendants in their official capacities, and she seeks injunctive relief. Specifically, she seeks an order prohibiting all further placement at Big Muddy and termination of the Big Muddy officials who participated in the sexual assault. Although a warden can be named in his official capacity for purposes of carrying out any injunction, it is not appropriate to name Defendant Roeckeman in this matter. *See Delaney v. DeTella*, 256 F.3d 679, 687 (7th Cir. 2001) (warden could be liable for injunctive relief relative to a prison policy imposing an unconstitutional condition of confinement). Plaintiff is no longer housed at Big Muddy, and the complaint sets forth no allegations suggesting that she is likely to return there. Therefore, Defendant Roeckeman (in his individual and official capacity) shall be dismissed from this action without prejudice, based on the failure to state any claim against this defendant upon which relief may be granted. Based solely on Plaintiff's request for permanent injunctive relief, the Court will allow Plaintiff to retain Defendant Godinez (in his official capacity only) for purposes of carrying out any injunctive relief that is ordered.

### Pending Motions

**A.     Motion for Preliminary Injunction (Doc. 2)**

The complaint includes a request for a preliminary injunction, in the form of an order

prohibiting prison officials from housing Plaintiff at Big Muddy and an order terminating the employment of those Big Muddy officials who violated her constitutional rights. However, Plaintiff's request is moot because she is no longer housed at Big Muddy. She is housed at Lawrence. Further, the complaint sets forth no allegations suggesting that she will ever return to Big Muddy. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Only if Plaintiff can show a realistic possibility that she would again be incarcerated at Big Muddy under the conditions described in the complaint, would it be proper for the Court to consider injunctive relief. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)). Plaintiff's request for a preliminary injunction is therefore denied. However, the denial is without prejudice. Plaintiff is free to file a motion seeking a preliminary injunction or a temporary restraining order pursuant to Federal Rule of Civil Procedure 65, if it becomes necessary to do so during the pending action.

**B.      Motion for Recruitment of Counsel (Doc. 4)**

Plaintiff's motion for recruitment of counsel shall be referred to United States Magistrate Judge **Donald G. Wilkerson** for further consideration.

**C.      Motion for Service of Process at Government Expense (Doc. 5**)

Plaintiff's motion for service of process at government expense is **GRANTED, in part,** as to Defendants Massey, Stoner, Johnson, Mohr, and Godinez, and **DENIED, in part,** as to all remaining defendants.

**Disposition**

  **IT IS HEREBY ORDERED** that **COUNTS 7, 8,** and **9** are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted, and **COUNTS 6** and **10** are **DISMISSED** without prejudice for the same reason.

  **IT IS ALSO ORDERED** that Defendants **ORANGE** and **NALLEY** are **DISMISSED with prejudice** from this action, and Defendants **KALAHER, LIPCHITZ, ROECKEMAN (individual and official capacity),** and **GODINEZ (individual capacity only)** are **DISMISSED** without prejudice.

  **IT IS FURTHER ORDERED** that with regard to **COUNTS 1, 2, 3, 4,** and **5**, the Clerk of Court shall prepare for Defendants **GODINEZ (official capacity only), JOHNSON, MASSEY, MOHR,** and **STONER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

  **IT IS ALSO ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally

effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on Plaintiff's motion for recruitment of counsel (Doc. 4).

Further, this entire matter is **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that her application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a

stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that she is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in her address; the Court will not independently investigate her whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 9, 2015**

_____
NANCY J. ROSENSTENGEL
United States District Judge